# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| KIARA MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:22-cv-00965 |
| v. | ) | |
| | ) | Chief Judge Waverly D. Crenshaw, Jr. |
| MOUNT ZION BAPTIST CHURCH, | ) | Magistrate Judge Jeffery S. Frensley |
| JOSEPH W. WALKER, III, and | ) | |
| STEPHANIE WALKER, | ) | **(JURY TRIAL DEMANDED)** |
| | ) | |
| Defendants. | ) | |

## <u>FIRST AMENDED COMPLAINT</u>

Kiara Moore ("Plaintiff" or "Mrs. Moore"), by and through her undersigned counsel, alleges and states as follows:

### PRELIMINARY STATEMENT

1.      Plaintiff brings this action against Defendants Mount Zion Baptist Church ("Mount Zion" or "Church"), Bishop Joseph W. Walker, III ("Bishop Walker"), and Dr. Stephaine Walker ("Dr. Walker").[1] Plaintiff brings this action against Mount Zion for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), breach of contract, or in the alternative to breach of contract, unjust enrichment. Plaintiff brings this action against all Defendants for violations of the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"); the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and the Equal Pay Act ("EPA").

---

[1] Bishop Walker and Dr. Walker may be referred to collectively as the "Mount Zion Leaders" or "Individual Defendants." Mount Zion and the Mount Zion Leaders may be referred to collectively as the "Defendants."

2.      Plaintiff seeks back pay; liquidated damages; front pay; the value of all employee benefits; compensatory damages; punitive damages; injunctive relief; pre-judgment interest; attorneys' fees and costs; and such other damages and relief that the Court may deem appropriate.

## JURISDICTION

3.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case or controversy.

## VENUE

4.      The actions and conduct giving rise to this Complaint arose and occurred in Davidson County, Tennessee, and venue is proper in this district pursuant to 28 U.S.C. § 1391.

## ADMINISTRATIVE REMEDIES

5.      Plaintiff timely filed two (2) charges with the Equal Employment Opportunity Commission ("EEOC") against Mount Zion, both stemming from the same nucleus of facts alleged herein. The first charge alleged that Mount Zion violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") (No.: 494-2021-02248), and the second alleged that Mount Zion retaliated against Plaintiff for filing her initial charge with the EEOC, 42 U.S.C. § 12203(a) (No.: 494-2022-01323). The EEOC has concluded its investigation into both charges. On or about March 14, 2023, Plaintiff received a Letter of Determination from the EEOC regarding the charges. On or about April 25, 2023, the EEOC issued Plaintiff a separate Notice of Right to Sue for each of the charges. Plaintiff is filing this First Amended Complaint within 90 days of receiving the Notice of Right to Sue for each of the charges.

## PARTIES & COVERAGE

6.     Plaintiff is an adult female citizen of the United States of America, who resides in Murfreesboro, Rutherford County, Tennessee.

7.     At all relevant times, Plaintiff was an "eligible employee" within the meaning of the FMLA, and an "employee" of Mount Zion within the meaning of the ADA, FLSA, and EPA.

8.     Mount Zion Baptist Church is a Tennessee Non-Profit Corporation, with its principal place of business located in this district at 7594 Old Hickory Boulevard, Whites Creek, Tennessee 37189.

9.     At all relevant times, Mount Zion employed fifty (50) or more employees and is an employer within the meaning of and is subject to the provisions of the ADA, FMLA, FLSA, and EPA.

10.     Bishop Walker is an adult natural person and citizen of the United States of America, who resides in Brentwood, Williamson County, Tennessee. Bishop Walker is the senior leader of Mount Zion.[2]

11.     At all relevant times, Bishop Walker was and continues to be an employer within the meaning of and is subject to the provisions of the FMLA, FLSA, and EPA.

12.     Dr. Walker is an adult natural person and citizen of the United States of America, who resides in Brentwood, Williamson County, Tennessee. Dr. Walker is and was at all relevant times married to Bishop Walker. As Bishop Walker's wife, Dr. Walker is known as the First Lady of Mount Zion. She is also one of the leaders of Mount Zion and the General Overseer of the Mount Zion Health & Wellness department.[3]

---

[2] "About Bishop Joseph W. Walker, III," https://www.mtzionnashville.org/bishop-joseph-w-walker-iii/ (last accessed April 25, 2023).
[3] "About Dr. Stephaine H. Walker," https://www.mtzionnashville.org/bishop-joseph-w-walker-iii-2/ (last accessed April 25, 2023).

13.     At all relevant times, Dr. Walker was, and continues to be, an employer within the meaning of and is subject to the provisions of the FMLA, FLSA, and EPA.

**FACTUAL ALLEGATIONS**

14.     Plaintiff received a bachelor's degree in Biological Sciences from Hampton University in 2012. She later received a Master of Science in Public Health from Meharry Medical College in 2014.

15.     In January of 2016, after interviewing with Dr. Walker, Mrs. Moore was hired as a full-time employee by Mount Zion as its Health & Wellness Program Coordinator ("Position").

16.     Prior to her employment with Mount Zion, Plaintiff was also a parishioner of the Church. Over the years, Plaintiff and Dr. Walker became particularly close.

17.     In 2013, Mount Zion appointed Dr. Walker as "Overseer of the Mt. Zion Health Care Ministry" and subsequently as "Overseer of Health and Wellness."[4]

18.     Mount Zion authorized and directed Dr. Walker to serve as the Head of Mount Zion's Health & Wellness Department. Throughout her employment with Mount Zion's Health & Wellness Department, Plaintiff's "on paper" supervisor changed three times, but her supervisor-in-fact was always Dr. Walker.

19.     Dr. Walker regularly held herself out publicly as the leader of Mount Zion's Health & Wellness Department including, but not limited to, when she attended events, accepted awards, or appeared in news or magazine articles on behalf of Mount Zion, and in furtherance of its business.

---

[4] "About Dr. Stephaine H. Walker," https://www.mtzionnashville.org/bishop-joseph-w-walker-iii-2/ (last accessed, April 20, 2023).

20.     Plaintiff and Dr. Walker communicated daily regarding the planning and organization of Mount Zion's events and programs, most if not all of which, required Dr. Walker's advance approval.

21.     As recently as March 7, 2023, Dr. Walker presided over meetings that she required Plaintiff to attend.

22.     On or about April 18, 2023, Dr. Walker, through a contractor of Mount Zion, informed Plaintiff that she was required to submit reports directly to Dr. Walker.

23.     During Plaintiff's employment with Mount Zion, she consistently met or exceeded the Defendants' expectations.

24.     Despite having similar levels of skill, effort and responsibility, Plaintiff was paid less than men working in other departments within the Church, including those men in the Music Department and the Marketing & Media Department.

25.     Plaintiff enjoyed success in her Position and substantially helped Mount Zion further its business and mission.

26.     In addition to receiving praise from Mount Zion leaders for her various work contributions, Plaintiff also consistently received above-average employee evaluations.

27.     While employed by Mount Zion, Plaintiff earned a Master of Arts in Non-Profit Administration from Lindenwood University in 2017.

28.     Dr. Walker has signed three letters of recommendation, on Mount Zion's letterhead, on Plaintiff's behalf: two (2) letters in support of Plaintiff's application to attend medical school; and one (1) letter in support of Plaintiff's application to attend a doctorate program.

29.     Mrs. Moore is the parent of a minor child, K.M., who suffers from Sickle Cell Disease ("Disability").

30.     K.M. was diagnosed with the Disability in May of 2020, shortly after she was born.

31.     Due to their personal-ministerial-work relationship, Plaintiff disclosed K.M.'s diagnosis and Disability to Dr. Walker almost immediately.

32.     K.M.'s Disability was further known throughout Mount Zion, including but not limited to, by Bishop Walker and Lawrence Washington ("Mr. Washington"), Mount Zion's Chief Operations Officer and General Overseer of the Human Resources and Operations departments.

33.     On December 5, 2020, Plaintiff was a "Featured Speaker" on a Live Stream Panel, co-hosted by Mount Zion, titled "Sickle Cell Disease: A Community Conversation." Plaintiff participated as a representative of Mount Zion, as well as in her capacity as a caregiver to someone with Sickle Cell Disease. Plaintiff's participation in this panel required advance approvals from Mount Zion, including from Dr. Walker, Mr. Andre Anderson, Ms. Kenyatta Bynoe and Mr. Martrell Harris.

34.     During the "Sickle Cell Disease: A Community Conversation," when introducing Plaintiff, the moderator stated, in part (referring to Plaintiff and Mount Zion):

> First of all, I'd like to thank you all for serving as a co-host for such as important program and we sincerely appreciate … Bishop Walker opening up the doors of the church and being so gracious to participate on today…[5]

35.     In her opening remarks during the "Sickle Cell Disease: A Community Conversation," Plaintiff stated, in part:

> Yes, so as you … mentioned, I am the Health and Wellness Coordinator at Mount Zion … in Nashville, Tennessee. … In my role as a caregiver [to someone with Sickle Cell] … Actually earlier this year, my newborn daughter was diagnosed with Sickle Cell Disease.[6]

---

[5] mtzionnashville, *Sickle Cell Disease: A Community Conversation*, YOUTUBE (Dec. 5, 2020), https://www.youtube.com/watch?v=UTi7LRS78XY&t=1s.
[6] *Id.*

36.     On December 6, 2020, K.M. was hospitalized due to her Disability.

37.     While Plaintiff and K.M. were en route to the hospital via ambulance, Plaintiff's husband notified Bishop Walker via text message that Plaintiff and K.M. were on their way to the hospital via emergency ambulance. Within minutes, Dr. Walker called Plaintiff to inquire as to K.M.'s health. A reasonable inference can be made that Bishop Walker informed Dr. Walker about K.M.'s condition and emergency transport.

38.     Plaintiff immediately notified Dr. Walker that K.M. had been hospitalized and for what reason. Plaintiff also notified Mr. Washington and Mr. Andre Anderson ("Mr. Anderson") on December 7, 2020, of the hospitalization, and for what reason.

39.     On December 8, 2020, while K.M. was still hospitalized, Dr. Walker contacted Plaintiff via text message to further inquire about K.M.'s then-current condition.

40.     At no time, upon learning of K.M.'s hospitalization, or anytime thereafter, did anyone from Mount Zion's Human Resources Department, Dr. Walker as Plaintiff's *de facto* supervisor, or any other leader, employee or agent of Mount Zion inform Plaintiff of her right to take FMLA leave.

41.     In observance of the holiday season, the Church was closed between December 18, 2020, and January 5, 2021.

42.     On or about January 12, 2021, about thirty-four (34) days after K.M. was released from the hospital, and only seven (7) days after the Church reopened after closure for the holiday season, Mr. Washington notified Plaintiff that (1) her full-time role was being reduced to part-time as of February 1, 2021; (2) her salary was being cut in half and she would become an hourly employee; and (3) that she would also lose her employee health benefits in March of 2021 ("Adverse Employment Action").

43.     Upon information and belief, in April of 2020, Mount Zion received almost $1,000,000.00 in Paycheck Protection Program ("PPP") loans from the United States Government.

44.     Mr. Washington informed Mrs. Moore that she was required to suffer the Adverse Employment Action because Mount Zion was undergoing "budget cuts." Indeed, Mr. Washington signed the offer letter wherein Plaintiff was to become a part-time hourly employee.

45.     Attached to the offer letter was a Position Description for the role of Program Coordinator for the Health and Wellness Department. The Position Description was prepared by Human Resources and approved by Bishop Walker.

46.     On information and belief, Bishop Walker is known to boast that "I am Mount Zion and I decide who stays and who goes." In other words, Bishop Walker has the final say when it comes to personnel matters.

47.     Between February 2021 and August 2021, upon information and belief, Mount Zion hired approximately nine (9) additional employees and/or contractors, including a contractor (May 2021) in its Health & Wellness Department. Several months after hiring the contractor into the Health & Wellness Department, Dr. Walker informed Plaintiff that she (i.e., Dr. Walker) had hired the contractor.

48.     Mount Zion's rationale for the Adverse Employment Action of "budget cuts" was pretext, because in or about August of 2021, only about seven (7) months after the Adverse Employment Action supposedly necessitated by budget cuts, the Church announced that it had paid off all its debt, including the mortgage debt on its principal place of business.

49.     When Plaintiff did not accept, and questioned Dr. Walker about Mount Zion's rationale for her demotion, Dr. Walker attempted to convince Plaintiff that her Adverse

Employment Action would be in the best interest of Plaintiff because Plaintiff had small children at home that needed her.

50. After the Adverse Employment Action and despite becoming a "part-time hourly employee," Plaintiff was required to work more than twenty (20) hours per week to prepare for events hosted by the Church, yet she was **not being paid** for any of the time that she worked over twenty (20) hours per week.

51. Because Plaintiff was working more than twenty (20) hours per week and not being paid for her time over twenty (20) hours, Plaintiff discussed the underpayment with Mr. Andre Anderson. Mr. Anderson directed Plaintiff to seek approval from Dr. Walker before he could provide any additional payment to Plaintiff.

52. Per Mr. Anderson's instructions, Plaintiff did in fact speak with Dr. Walker about the underpayment. Dr. Walker did not approve any additional pay for Plaintiff.

53. The Defendants discriminated against Mrs. Moore based on her known association with an individual with a disability.

54. The Defendants retaliated against Plaintiff for resisting and opposing the Defendants' discrimination against her, a person known by the Defendants to be associated with a person with a disability.

55. Plaintiff remains employed by Mount Zion and its retaliatory conduct toward Plaintiff has continued. Upon information and belief, Defendant(s) has instructed some of its other employees to ostracize, ignore and isolate Plaintiff by, amongst other things, refusing to meet or otherwise communicate with Plaintiff on matters critical to her fulfilling her work obligations, though they continue to meet with other employees as necessary.

56.     Commencing February 1, 2021, Plaintiff was required to, and regularly and consistently did, perform work for Mount Zion, at the request of and direction of Mount Zion's leaders, including Dr. Walker, for which she was not fully paid, despite her having the expectation that she would be paid for all time worked. Defendants have yet to pay Plaintiff for the hours she worked beyond twenty (20) hours per week.

## COUNT ONE
### Violation of the Americans with Disabilities Act
### 42. U.S.C. § 12112 (a) and (b)(4) Against Mount Zion

57.     Plaintiff incorporates herein by reference, Paragraphs 1 through 56 as if set forth verbatim.

58.     Plaintiff was qualified for her Position with Mount Zion, performed her job duties well, and met or exceeded Mount Zion's expectations during her employment.

59.     Plaintiff's daughter K.M. has a disease that qualifies as a disability under the ADA.

60.     Plaintiff was subjected to an Adverse Employment Action, which occurred shortly after K.M. was hospitalized.

61.     K.M.'s Disability was known to Mount Zion before, and at the time of the Adverse Employment Action.

62.     Plaintiff's Adverse Employment Action occurred under circumstances that raise a reasonable inference that K.M.'s Disability was a determining factor in the Adverse Employment Action.

63.     Mount Zion violated the ADA when it took the Adverse Employment Action against Mrs. Moore.

64.     Mount Zion discriminated against Mrs. Moore intentionally. Mount Zion acted maliciously and/or with reckless indifference to Mrs. Moore's rights.

65.     Mount Zion did not make a good-faith effort to comply with the ADA when it took the Adverse Employment Action.

66.     As a direct and proximate result of Mount Zion's unlawful conduct, Plaintiff has suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

67.     Plaintiff is entitled to recover her damages, including lost wages and benefits, front pay, compensatory and punitive damages, attorneys' fees, costs, interest, and any other legal and equitable relief to which she may be entitled.

## COUNT TWO
### Retaliation Against Mrs. Moore in Violation the ADA
### 42 U.S.C. § 12203 (a) Against Mount Zion

68.     Plaintiff incorporates herein by reference, Paragraphs 1 through 67 as if set forth *verbatim*.

69.     Upon information and belief, Mount Zion pays for its employee health insurance plans on a quarterly basis.

70.     Mrs. Moore filed her first Charge of Discrimination against Mount Zion (Charge No.: 494-2021-02248), alleging ADA discrimination, on or about November 1, 2021 ("First Charge"). Upon information and belief, Mount Zion became aware of the First Charge during the week of November 12, 2021.

71.     Upon information and belief, on or about January 24, 2022, Mount Zion terminated Mrs. Moore's health insurance, through which K.M. received coverage for her Disability and backdated the termination date to November 15, 2021 despite having already paid insurance premiums through the first quarter of 2022.

72. By terminating and backdating the termination of Mrs. Moore's health insurance coverage to November 2021, Mount Zion retaliated against Mrs. Moore for opposing its unlawful ADA discrimination in violation of 42 U.S.C. § 12203(a). On or about March 7, 2022, Plaintiff filed a second Charge against Mount Zion (Charge No.: 494-2022-01323) ("Second Charge").

73. Mount Zion's actions constitute unlawful retaliation in violation of the ADA.

74. Mount Zion retaliated against Mrs. Moore intentionally. Mount Zion acted maliciously and/or with reckless indifference to Mrs. Moore's rights.

75. Mount Zion did not make a good-faith effort to comply with the ADA when it terminated Mrs. Moore's health insurance.

76. As a direct and proximate result of Mount Zion's retaliatory and unlawful conduct, Plaintiff has suffered great mental anguish, personal humiliation, inconvenience, and loss of benefits.

77. As a result of Mount Zion's unlawful and retaliatory conduct, Plaintiff is entitled to equitable and any other relief that is appropriate.

### COUNT THREE
**Interference in Violation of the Family and Medical Leave Act**
**29 U.S.C. § 2615(a)(1) Against All Defendants**

78. Plaintiff incorporates herein by reference, Paragraphs 1 through 77 as if set forth *verbatim*.

79. Mrs. Moore was an "eligible employee" pursuant to the FMLA.

80. Plaintiff worked full-time for Mount Zion, starting in 2016, through January 31, 2021, and worked a number of hours in excess of 1,250 in the 12-month period prior to Plaintiff informing Dr. Walker and Mr. Washington that K.M. had been hospitalized with complications from her Disability.

81. Mount Zion was and continues to be an "employer" under the FMLA.

82. At all relevant times, Bishop Walker was and continues to be an "employer" under the FMLA (29 U.S.C. § 2611(4)).

83. At all relevant times, Dr. Walker was and continues to be an "employer" under the FMLA (29 U.S.C. § 2611(4)).

84. At all relevant times Mount Zion employed greater than fifty (50) employees and was engaged in an industry or activity that "affected commerce." Specifically, upon information and belief, Mount Zion has approximately 30,000 parishioners in and throughout Tennessee, Georgia, Alabama, Washington, D.C., and Louisiana. The out-of-state parishioners frequently travel to and from Tennessee to attend services and events hosted by Mount Zion. Mount Zion also advertises its services and events on a number of radio stations; broadcasts its services and events on television, and "live-streams" the same online, including on Facebook, YouTube, and through its own mobile application. Mount Zion accepts donations from its parishioners, including those from out-of-state. Mount Zion also rents out its facilities for various events, including graduations, concerts and weddings, for a fee. Moreover, Mount Zion regularly engages other third-party companies and/or individuals, including, but not limited to, food vendors (*e.g.* Lost Spoon); transportation vendors (*e.g.* Gray Line); and security vendors (*e.g.* Metro Nashville off-duty police officers).

85. At all relevant times, the Mount Zion Leaders had day-to-day control over Mount Zion and were authorized to act, and did act, on behalf of Mount Zion with respect to its employees.

86. At all relevant times, Dr. Walker also possessed direct supervisory authority over Plaintiff.

87.     Neither the Defendants nor any of their employees or agents notified Plaintiff of her eligibility to take FMLA leave upon learning of K.M.'s hospitalization in early December 2020, nor at any time thereafter. Nor did the Defendants or any of their employees or agents undertake any additional inquiries or collect additional information from Plaintiff to ascertain whether she required leave, or to effectuate Plaintiff's FMLA leave.

88.     The Defendants denied Plaintiff a benefit she was entitled to, pursuant to the FMLA, and interfered with the exercising of that benefit, by failing to notify her of her FMLA rights when it received information that she may need FMLA leave.

89.     The Defendants also interfered with Plaintiff's right to FMLA leave and attempted to manipulate the situation to avoid coverage under the FMLA, by reducing Plaintiff's hours to avoid her eligibility for FMLA.

90.     The Defendants' willful and unlawful conduct foreclosed Mrs. Moore's rights under the FMLA, including, but not limited to, denying her the opportunity to exercise those rights.

91.     As a result of the Defendants' willful and wrongful acts and omissions, Plaintiff has suffered and continues to suffer substantial losses. Plaintiff is entitled to recover her liquidated damages, attorneys' fees, costs, and other damages recoverable by law.

## COUNT FOUR
### Violation of the Fair Labor Standards Act
### 29 U.S.C. §201 *et seq*. Against All Defendants

92.     Plaintiff incorporates herein by reference, Paragraphs 1 through 91 as if set forth *verbatim*.

93.     At all material times, Plaintiff was an "employee" within the meaning of the FLSA. Mrs. Moore was not employed as a minister by Mount Zion, and none of the FLSA exemptions

applied to her after January 31, 2021. Plaintiff was entitled to the rights, protections and benefits provided under FLSA.

94.     Plaintiff's work duties included, and at times required, Plaintiff to travel to, and to work from, locations outside of Tennessee.

95.     Mount Zion and Dr. Walker also tasked Plaintiff with coordinating initiatives and/or events on behalf of Mount Zion, that were attended and/or participated in by persons living outside of the State of Tennessee.

96.     At all relevant times, Mount Zion was and continues to be an "employer" within the meaning of the FLSA.

97.     At all relevant times, Bishop Walker was and continues to be an "employer" under the FLSA (29 U.S.C. § 203(d)).

98.     At all relevant times, Dr. Walker was and continues to be an "employer" under the FLSA (29 U.S.C. § 203(d)).

99.     The Defendants had the ability to do the following with respect to Plaintiff: hire and fire, supervise work schedules and conditions of employment, and determine rates and methods of payment. As an employer, Mount Zion had an obligation under law to maintain accurate employment records.

100.    Based upon information and belief, the annual gross revenue of Mount Zion was in excess of $500,000 per annum during the relevant period.

101.    At all times material hereto, the work performed by the Plaintiff was directly essential to the business of Mount Zion.

102.    Plaintiff suffered or was permitted to work by Mount Zion and the Mount Zion Leaders.

103.     FLSA regulates, among other things, the payment of regular time wages and overtime pay for employees who are engaged in the business activities of Mount Zion.

104.     Mount Zion was subject to the record-keeping, minimum wage, and overtime pay requirements of the FLSA because it is an enterprise engaged in commerce, and its employees are engaged in commerce.

105.     Upon information and belief, Mount Zion has employed and continues to employ persons that live and work outside of the state of Tennessee.

106.     Upon information and belief, Mount Zion has approximately 30,000 parishioners in and throughout Tennessee, Georgia, Alabama, Washington, D.C., and Louisiana. The out-of-state parishioners frequently travel to and from Tennessee to attend services and events hosted by Mount Zion. Mount Zion also advertises it services and events on a number of radio stations; broadcasts its services and events on television, and "live streams" the same online, including on Facebook, YouTube, and through its own mobile application. Mount Zion accepts donations from its parishioners, including those from out-of-state. Mount Zion also rents out its facilities for various events, including graduations, concerts, and weddings, for a fee. Moreover, Mount Zion regularly engages other third-party companies and/or individuals including but not limited to food vendors (*e.g.* Lost Spoon); transportation vendors (*e.g.* Gray Line); and security vendors (*e.g.* Metro Nashville off-duty police officers).

107.     Mount Zion failed to pay Plaintiff for all her time worked, despite her having the expectation that she would be, including regular time wages and overtime. While perpetuating these unlawful practices, Mount Zion has willfully failed to keep accurate records of all hours worked by Plaintiff.

108.    At all relevant times, the Mount Zion Leaders had day-to-day control over Mount Zion and were authorized to act and did act on behalf of Mount Zion with respect to its employees.

109.    At all relevant times, Dr. Walker also possessed direct supervisory authority over Plaintiff and the authority to approve pay to Plaintiff for work that she performed over twenty (20) hours per week following the Adverse Employment Action.

110.    Plaintiff is entitled to damages equal to the unpaid wages and mandated overtime premium pay for the time she worked for Mount Zion because the Defendants acted willfully and knew, or showed reckless disregard, as to whether its conduct was prohibited by the FLSA.

111.    The Defendants have not acted in good faith, nor do they have reasonable grounds to believe their actions and/or omissions were not in violation of the FLSA.

112.    Plaintiff is entitled to an award of pre- and post-judgment interest, attorneys' fees, and costs and liquidated damages in an amount equal to the unpaid wages and overtime pay described herein pursuant to 29 U.S.C. § 216(b).

## COUNT FIVE
### Violation of the Equal Pay Act of 1963
### 29 U.S.C. § 206(d) Against All Defendants

113.    Plaintiff incorporates herein by reference, Paragraphs 1 through 112 as if set forth *verbatim*.

114.    The Equal Pay Act of 1963 protects against wage discrimination based on sex.

115.    At all times herein, the compensation Mount Zion paid to Plaintiff as Health and Wellness Program Coordinator was substantially less than the compensation paid to men in similar positions within the Church that require a substantially similar level of skill, effort, and responsibility.

116. As a direct and proximate result of the Defendants' willful and unlawful conduct, Plaintiff has suffered lost earnings and benefits in an amount equal to the difference between what she was paid, and the amount that was paid to her male colleagues, the total of which shall be determined at trial.

117. Plaintiff is entitled to recover her damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, and any other legal and equitable relief to which she may be entitled.

## COUNT SIX
### Breach of Contract Against Mount Zion

118. Plaintiff incorporates herein by reference, Paragraphs 1 through 117 as if set forth *verbatim*.

119. Mount Zion, for its benefit, entered into an express contract with Plaintiff under which Mount Zion promised to pay wages to Plaintiff at certain hourly rates (whether a regular rate of pay for forty (40) or fewer hours worked in a workweek or at one-and-one half times her regular rate of pay for any hours worked in excess of forty (40) hours per week) for all work Plaintiff performed, without exception.

120. Mount Zion promised to pay Plaintiff for all such wages for work performed, on many occasions, between February 1, 2021, through approximately the week of January 13, 2022.

121. Each time Plaintiff performed her duties and worked for Mount Zion's benefit, Plaintiff accepted Mount Zion's offer to compensate Plaintiff at a certain, defined hourly rate for all work performed.

122. Mount Zion failed to fulfill its promises and breached its contract with Plaintiff by having Plaintiff perform work, without compensation and subsequently refusing, or otherwise failing to pay Plaintiff for said work.

18

123. There were no conditions precedent that Plaintiff failed to perform before she was entitled to the promised payment of wages for all work performed by Plaintiff for Mount Zion's benefit.

124. As a direct and proximate result of Mount Zion's conduct, Plaintiff has suffered injury and is entitled to damages resulting from Mount Zion's breach of contract, including payment of all unpaid wages for work performed, without compensation, interest, and other relief in an amount to be determined at trial.

### COUNT SEVEN
**Unjust Enrichment Against Mount Zion**
**(In the Alternative to Count Four)**

125. Plaintiff incorporates herein by reference, Paragraphs 1 through 124 as if set forth *verbatim.*

126. By providing labor to Mount Zion, Plaintiff conferred benefits to Mount Zion, receipt of which it was aware and acknowledged.

127. Mount Zion received, kept, and retained the benefits conferred upon it by Plaintiff, without providing Plaintiff with compensation for said benefits.

128. Mount Zion's retention of the benefits conferred on it by Plaintiff, and its failure to provide Plaintiff compensation for the same, violated federal and state labor laws as alleged herein and was therefore unjust.

129. As a direct and proximate result of its actions, Mount Zion has reaped unfair benefits and illegal profits at the expense of Plaintiff. Mount Zion should be made to account for and restore to Plaintiff the monies that were wrongly reaped by it at Plaintiff's expense.

130.    Mount Zion's actions entitle Plaintiff to preliminary and permanent injunctive relief, including but not limited to an order that Mount Zion account for and restore the compensation wrongly withheld from Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request judgment as follows:

A.    That Plaintiff be awarded back pay, front pay, compensatory and punitive damages pursuant to the 42. U.S.C. §§ 12112 (a), (b)(4), 12117(a) and 1981a(a)(2).

B.    That Plaintiff be awarded equitable relief pursuant 42 U.S.C. § 12203 (a);

C.    That Plaintiff be awarded back pay, front pay, value of lost benefits and liquidated damages pursuant to the FMLA;

D.    That Plaintiff be awarded back wages and liquidated damages pursuant to the FLSA;

E.    That Plaintiff be awarded back pay and liquidated damages pursuant to the EPA;

F.    That Plaintiff be awarded the value of her unpaid wages;

G.    That the Court permanently enjoin the Defendants from implementing, maintaining or otherwise perpetuating policies and/or conduct that is unlawful, discriminatory and violates the provisions of the ADA, FMLA, FLSA or the EPA;

H.    That Plaintiff be awarded costs and attorneys' fees incurred in connection with this action;

I.    Any other relief permissible under the laws alleged; and

J.    Any and all other relief that the Court deems appropriate and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: May 3, 2023

Respectfully Submitted,

s/ Christopher C. Sabis

Christopher C. Sabis (Bar No. 030032)
SHERRARD ROE VOIGT & HARBISON, PLC
150 3rd Avenue South, Suite 1100
Nashville, Tennessee 37201
Phone: (615) 742-4200
Facsimile: (615) 742-4539
Email: csabis@srvhlaw.com

- and -

William D. Harris II
*Pro Hac Vice*
HARRIS LEGAL ADVISORS LLC
605 N. High Street, Suite 146
Columbus, Ohio 43215
Phone: (614) 504-3350
Facsimile: (614) 340-1940
Email: will@harrislegaladvisors.com

*Attorneys for Plaintiff Kiara Moore*