# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| KIARA MOORE, | ) Case No. 3:22-cv-00965 |
| Plaintiff, | ) |
| | ) Judge Trauger |
| v. | ) |
| | ) **DECLARATION OF KIARA MOORE IN** |
| MOUNT ZION BAPTIST CHURCH, | ) **SUPPORT OF PLAINTIFF'S MOTION FOR** |
| JOSEPH W. WALKER, III, and | ) **ATTORNEYS' FEES AND REIMBURSEMENT** |
| STEPHAINE WALKER, | ) **OF EXPENSES** |
| Defendant. | ) |

I, Kiara Moore, the Plaintiff in the above-referenced matter, declare as follows:

1. I am over the age of 18, and the following facts are within my personal knowledge and, if called as a witness, I can and will testify competently.

2. I submit this Declaration in support of my attorneys' request for attorney's fees and reimbursement of costs.

3. I began attending Mount Zion as a parishioner in 2009. In 2015, Dr. Walker contacted me to discuss the potential for Mount Zion to hire me into the Health and Wellness ministry led by Dr. Walker. Upon receiving an offer, I became even more excited at the chance to merge two worlds that I was, and remain, passionate about: public health and ministry.

4. I began working for Mount Zion Baptist Church in January 2016. Throughout my employment with Mount Zion, I have reported to Dr. Stephaine Walker.

5. In March 2020, I gave birth to my daughter, K.M. She was diagnosed with Sickle Cell Disease a short time thereafter.

6. In December 2020, my daughter was hospitalized for the very first time due to complications from her disease.

7. In early January 2021, Mount Zion informed me that my full-time salaried role was being reduced to part-time, that I would become an hourly employee making $22.57 per hour and I would no longer be eligible for healthcare benefits that were provided by the church. This part-time role capped my hours at 20 per week.

8. Prior to this, my base salary was approximately $▮▮▮▮▮ per year. After I went part-time, I made approximately half of what I made before the Adverse Employment Action.

9. On November 1, 2021, I filed a charge (No. 494-2021-02248) with EEOC alleging that Mount Zion Baptist Church discriminated against me because of my relationship with my daughter.

10. Before filing the charge, I contacted four Nashville-based law firms about representing me against Mount Zion. They all declined, and so I filed the charge without representation.

11. In November 2021, I contacted Will Harris about representing me. I had not worked with Mr. Harris before then, but I heard that he represented employees against big companies in the past on contingency.

12. When he did agree to represent me on a contingency, frankly, I was relieved for a couple of reasons. First, I am not sure I would have continued to pursue my claims against such powerful people without representation. Second, I certainly could not afford to pay Mr. Harris, or anyone else, an hourly rate or any money up front.

13. After I filed my first EEOC charge, my work environment deteriorated. After first allowing me to keep my health insurance benefits after I went part-time, Mount Zion terminated those benefits and backdated the termination to the month I filed my first charge. I only discovered this when I took my daughter to the doctor. I was devastated. I leaned on my attorneys, who clearly explained my options, and assisted me with filing a retaliation charge with the EEOC on March 7, 2022 (No. 494-2022-01323).

14. This experience has taken a tremendous toll on me. It has forever changed my outlook on life, how I trust and confide in people, and how I navigate my professional, personal,

DECLARATION OF KIARA MOORE IN SUPPORT OF PLAINTIFF'S     Page 2 of 4
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Case 3:22-cv-00965     Document 63     Filed 11/17/23     Page 2 of 4 PageID #: 1060

and spiritual life in light of my daughter's disability. Despite this, I remained in my role until October 24, 2023, in part because I wanted to keep the defendants honest in discovery and force them to produce relevant documents that I knew existed. For instance, during my case, I was able to discover that someone from Mount Zion tried to delete relevant emails from my work email account. I alerted my attorneys and they immediately addressed and resolved the issue.

15. My continued employment came at a cost to my personal, and spiritual well-being. Because of this, I wanted my attorneys to resolve my case as quickly and beneficially for me and my family as possible. So in July, when the possibility of mediation and settlement came up, I was excited about potentially putting this nightmare behind me then.

16. Throughout my lawsuit, and even when my charges were being investigated by the EEOC, my primary attorney, Mr. Harris, has always made himself available to me, day or night, even while he was traveling. For example, when he was traveling with his family in Australia, he agreed to speak with me at 3:30am local time. On several occasions, Mr. Harris and Mr. Wagenleitner accommodated my requests to meet after 9pm local time so that I could feed my children and put them to bed before working with them on my case.

17. Mr. Harris never turned me away when I had questions, no matter how busy he was. I had a lot of questions, especially during the EEOC phase of my case when I was scared and did not fully understand the process. He always took the time to communicate to me exactly what was going on in my case, which made me feel empowered and in charge of the direction of my lawsuit. On average, Mr. Harris and I spoke twice per week. We had calls or conferences ranging in length from 5 minutes to over 2 hours. By my very unofficial count, over the last two years, I have spent about 107 hours working with my attorneys on my case.

18. Mr. Harris and his colleagues thoroughly explained to me exactly what to expect in the discovery process, including how depositions work, and walked me through what information I had to give to the other side. Because of my knowledge of Mount Zion's systems and internal procedures, I also worked closely with them to make sure we requested and received information from defendants that would help my case.

DECLARATION OF KIARA MOORE IN SUPPORT OF PLAINTIFF'S   Page 3 of 4
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Case 3:22-cv-00965    Document 63    Filed 11/17/23    Page 3 of 4 PageID #: 1061

19. In September, when Defendants expressed serious interest in settling my case, Mr. Harris and his team moved quickly. Mr. Harris even changed his international travel plans to come to Nashville to try and resolve my case.

20. On October 18, 2023, I participated in a mediation with Defendants. Throughout that process my attorneys made sure I understood my rights and the process, which again, made me feel empowered. Even when I became overwhelmed with emotion, my attorneys supported me in a way I was not expecting, but certainly appreciated.

21. What was clear to me during the mediation, and throughout the entirety of my case, was that my attorneys genuinely cared about me as a person and what I went through during my employment with defendants. I felt like that motivated them to fight for me.

22. After over ten hours of mediation, and in consultation with my attorneys, I settled my case. I signed the settlement agreement on October 24, 2023.

23. I really struggle to find the words that accurately capture, just how much I appreciate Mr. Harris, Mr. Ryan Wagenleitner and Mr. Chris Sabis.

24. It is my sincere hope that you will reward my attorneys for their hard and excellent work on my behalf. What they achieved for me is truly something I did not think was possible.

I declare under penalty of perjury that the foregoing is true and accurate. Executed this 16th day of November, 2023, in Rutherford County, Murfreesboro, Tennessee.

Dated: November 16, 2023

Respectfully Submitted,

Kiara Moore

*Plaintiff*

DECLARATION OF KIARA MOORE IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES — Page 4 of 4

Case 3:22-cv-00965  Document 63  Filed 11/17/23  Page 4 of 4 PageID #: 1062