# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

KIARA MOORE,          )
      \Plaintiff,      )
               )
v.                    )       **Civil Action No. 3:22-cv-00965**
               )       **Judge Trauger/Frensley**
**MOUNT ZION BAPTIST CHURCH,**  )
**ET AL.,**           )
      **Defendants.**    )

## REPORT AND RECOMMENDATION

## I.      BACKGROUND

On November 30, 2022, Kiara Moore ("Plaintiff") initiated this action in federal district court. Docket No. 1. On May 19, 2023, Plaintiff filed the First Amended Complaint, asserting against Mount Zion Baptist Church ("Mount Zion") violations of the Americans with Disabilities Act ("ADA"), a breach of contract claim, and an unjust enrichment claim. Docket No. 28, pp. 10-11, 18-19.[1] Furthermore, in the First Amended Complaint, Plaintiff alleged that Mount Zion, Bishop Joseph W. Walker, III, and Dr. Stephanie Walker (collectively "Defendants") violated the Family Medical Leave Act ("FMLA"), the Fair Labor Standards Act ("FLSA"), and the Equal Pay Act of 1963 ("EPA"). *Id.* at 1, 12, 14, 17. On October 24, 2023, the parties executed a formal settlement agreement. Docket No. 62, p. 5.

This matter is now before the Court upon Plaintiff's Motion for Attorneys' Fees. Docket No. 61. Plaintiff has filed declarations of Kiara Moore, William D. Harris, Christopher C. Sabis, Jerry E. Martin and Wade B. Cowan in support of Plaintiff's Motion for Attorneys' Fees. Docket Nos. 63, 64, 65, 67, 69. Defendants have filed a Response in Opposition. Docket No. 78. In support

---

[1] The unjust enrichment claim was brought in the alternative to the allegation that Mount Zion violated the FLSA. Docket No. 28, pp. 14, 19.

of their Response in Opposition, Defendants have filed a declaration of Paige Lyle. Docket No. 82. Plaintiff has filed a Reply. Docket No. 85. For the reasons set forth below, the Court recommends that Plaintiff's Motion (Docket No. 61) be **GRANTED IN PART** and **DENIED IN PART**.

## II.     LAW AND ANALYSIS

### A.     Recovery of Fees

"Our legal system generally requires each party to bear his own litigation expenses, including attorney's fees, regardless [of] whether he wins or loses." *Fox v. Vice*, 563 U.S. 826, 832 (2011). Therefore, courts do not award "fees to a prevailing party absent explicit statutory authority." *Buckhannon Bd. & Care Home v. W.Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001) (internal quotation marks and citation omitted). The statutes under which Plaintiff sued—the ADA (42 U.S.C. § 12205), FLSA (29 U.S.C. § 216(b)), FMLA (29 U.S.C. § 2617(a)(3)), and EPA (29 U.S.C. § 216(b))—provide explicit statutory authority to award Plaintiff with "a reasonable attorney's fee." The ADA provides that "[i]n any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. The FLSA, the FMLA, and the EPA provide that the court shall "allow a reasonable attorney's fee" and other costs "to be paid by the defendant." 29 U.S.C. § 216(b); 29 U.S.C. § 2617(a)(3). Defendants have not disputed that there is statutory authority to award Plaintiff a reasonable attorney's fee. Likewise, Defendants have not disputed that Plaintiff is a "prevailing party." Thus, the Court will only consider the reasonableness of the requested attorneys' fees and costs.

### B. Reasonable Attorneys' Fees

In determining the amount a party must pay in fees, generally "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Known as the "lodestar" amount, this calculation provides an "initial estimate of the value of a lawyer's services." *Id.* "But trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox*, 563 U.S. at 838. "The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection;" therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

Calculating the lodestar is not necessarily the end of the inquiry. After determining the lodestar amount, "the court *may* adjust the fee upward or downward to reflect relevant considerations peculiar to the subject litigation." *NAACP v. Hargett*, No. 3:19-cv-00365, 2021 WL 4441262, at *3 (M.D. Tenn. Sept. 28, 2021) (emphasis added), *quoting Adcock-Ladd v. Sec'y of Treasury*, 227 F. 3d 343, 349 (6th Cir. 2000) (internal quotation marks omitted). In either "determining the basic lodestar fee and/or adjustments thereto," the district court may consider the following factors:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Adcock-Ladd*, 227 F. 3d 343, 349 n. 8 (6th Cir. 2000), citing *Johnson v Georgia Highway Express, Inc.*, 488 F. 2d 714, 717-19 (5th Cir. 1974).

Initially, Plaintiff requested an award of $488,748.00 for attorneys' fees. Docket No. 62,

p. 8. Then, Plaintiff requested an additional award of $3,559.50 for work completed after filing the initial fee petition. Docket No. 85-2, p. 1. Thus, the fee award Plaintiff seeks totals $492,307.50. The law firms who represented Plaintiff in this case are Harris Legal Advisers LLC ("HLA") based in Columbus, Ohio, and Sherrard Roe Voigt & Harbison, PLC ("SRVH"), which is a local law firm. Docket No. 69-4, pp. 2, 7. SRVH's attorneys served as local counsel. *Id.* at 7. Plaintiff's requested fee award includes hours worked by attorneys at both of these law firms, and the Court considers both the reasonableness of the requested hourly rates and number of hours in the following sections of this Report and Recommendation.

### 1.    Reasonable Rate

When determining the reasonableness of an hourly rate, "[t]he appropriate rate…is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). The market rate is "defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F. 3d 784, 791 (6th Cir. 2004). When determining the appropriate market rate, "[a] district court is permitted to 'rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests.' " *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821-22 (6th Cir. 2013) (quoting *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011)).

### a.    HLA Rates

Concerning HLA's rates, the Court first considers Plaintiff's argument regarding which market rate should apply, Columbus' or Nashville's. Despite this case taking place in the Middle District of Tennessee, Plaintiff contends that the Court should "consider the 'out-of-market' rates

of HLA." Docket No. 62, p. 20. Plaintiff maintains this is proper as she "was required to seek counsel from outside of the Middle District of Tennessee after multiple local lawyers declined the representation." *Id.*

The Court does not find this argument persuasive. In Plaintiff's declaration, she states that she attempted to hire four lawyers in this region prior to seeking HLA's services. Docket No. 63, p. 2. The Court does not believe that four lawyers declining the representation is sufficient to indicate Plaintiff was required to seek services outside of this region; there are far more than four employment lawyers in Nashville and its surrounding region. Furthermore, the fact that Plaintiff was later able to secure SRVH attorneys as local counsel who were not merely lawyers to answer specific questions about rules or issues of law in the Middle District of Tennessee but included Christopher Sabis, an experienced attorney with expertise in ADA claims who helped with the case strategy and arguments on the merits, cuts against her argument that she was required to seek counsel elsewhere. Docket Nos. 67, p. 3; 67-1; 69-4, p. 7. Accordingly, the Court will proceed by examining the requested rates with reference to the prevailing local market rates in the Nashville area.

Regarding the specific rates, Plaintiff requests $535.00 per hour for Mr. Harris' work on the case. Docket No. 62, p. 18. According to his declaration, Mr. Harris is the managing member of HLA, has worked in private practice for nearly twenty years, and has prior experience with employment cases. Docket No. 69-4, pp. 2, 4-5. Furthermore, Mr. Harris states that his rate has been lowered to $535.00 per hour to match "the average hourly rates of SRVH partner-level attorneys, excluding the highest and lowest hourly rate." *Id.* at 16.

In an attempt to justify a rate of $535.00 per hour, Mr. Harris lists in his declaration three prior cases where courts approved high hourly rates for his work. *Id.* at 5. Yet, these cases do not

persuade the Court that a rate of $535.00 per hour is appropriate in this case. These cases did not occur in this district or region; two of the cases are from the Southern District of New York and the third case is from the District of New Jersey. *Id.* Furthermore, these prior cases are not employment cases, nor are they cases that would require a similar amount of expertise as a single-plaintiff employment case. Instead, two of these cases appear to be class action lawsuits involving issues of antitrust law, and the third case appears to be a shareholder derivative suit. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430 (S.D.N.Y. 2018); *In re Ductile Iron Pipe Fittings (DIPF) Direct Purchaser Antitrust Litig.*, No. Civ. 12-711, 2014 WL 3971620 (D.N.J. Aug. 13, 2014); *Chill v. Calamos Advisors LLC*, 175 F. Supp. 3d 126, 128 (S.D.N.Y. 2016).[2]

Plaintiff requests $375.00 per hour for Mr. Wagenleitner's work on the case. Docket No. 62, p. 18. According to Mr. Harris' declaration, Mr. Wagenleitner is "Of Counsel and eDiscovery Director for HLA." Docket No. 69-4, p. 5. He has several years of litigation experience, previously being a "Litigation Associate and Director of eDiscovery, for a nationally recognized plaintiff's firm located in New York City." *Id.* According to Mr. Harris, Mr. Wagenleitner's rate has been lowered to $375.00 per hour to match "the average hourly rate of associate and of counsel attorneys at SRVH, excluding the highest and lowest hourly rate for them." *Id.* at 16.

In support of the requested rates, Plaintiff has filed declarations by Jerry E. Martin and Wade B. Cowan. Docket Nos. 64, 65. Yet, these declarations do not help the Court in reaching its determinations regarding any of the attorney's rates. *See* Docket Nos. 64, 65; *McMahon v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, No. 3:13-CV-00319, 2016 WL 10650816, at *8

---

[2] William Harris in his declaration provided unclear citations to these cases. *See* Docket 69-4, p. 5. After completing research, the Court presumes these are the cases to which counsel refers.

(M.D. Tenn. Sept. 7, 2016), *aff'd*, No. 16-6498, 2017 WL 8217669 (6th Cir. June 27, 2017) (taking issue with supporting affidavits of other plaintiff's lawyers in Nashville to support the attorney's requested rate when "none of these attorneys even stated that a court had awarded them" that rate). The provided declarations make conclusory statements regarding the reasonableness of the requested rates and lack specific cases or evidence to support these statements. *See* Docket Nos. 64, 65. For example, Mr. Martin stated, "[b]ased on the rates that I have been awarded in FLSA actions, these rates are in-line and consistent with rates typically approved in the Middle District of Tennessee." Docket No. 64, p. 7. Yet, Mr. Martin fails to list or provide any of these cases for the Court's review. *Id.*

Regarding Mr. Harris, the Court does not find an hourly rate of $535.00 to be reasonable in this case and instead recommends that Mr. Harris' rate be lowered to $450.00 per hour. Regarding Mr. Wagenleitner, the Court finds the requested rate of $375.00 per hour to be reasonable. Two years ago, Judge Trauger noted that "recent opinions from within this district have approved hourly rates in FLSA disputes ranging from $250.00 to $475.00 per hour, with the most common rate approved being $350.00 per hour." *Howard v. Ellis Moving & Storage, LLC*, No. 3:21-cv-00086, 2022 WL 1005304, at *4 (M.D. Tenn. Apr. 4, 2022). In *Howard*, Judge Trauger found that the requested rates of $475.00 and $450.00 per hour for the plaintiff's attorneys were too high, and she lowered the rates to be $400.00 per hour for the more experienced attorney on the case and $375.00 per hour for the less experienced attorney on the case. *Id.* Around the same time, Judge Campbell entered a fee award in *McGruder v Metropolitan Government of Nashville and Davidson County, Tennessee*, approving an award of attorney's fees at an hourly rate of $500.00 per hour. 3:17-cv-01547, 2022 WL 2975298 (M. D. Tenn. July 27, 2022). Given these ruling and considering the rate of inflation since those rulings, a rate of $450.00 per hour

appears reasonable.

As in *Howard*, the case at bar is an employment case that did not proceed to trial. *Id.* Defendants attempt to distinguish *Howard* from the present case and argue for lower rates than the approved rates in *Howard*—as Defendants contend that the attorneys in this case are less experienced than the *Howard* attorneys. *See id.*; Docket No. 78, p. 8. On the other hand, Plaintiff attempts to distinguish *Howard*, arguing for higher rates than in *Howard* because, as Plaintiff argues, the claims in this case were more complex. *See* 2022 WL 1005304, at *4-5; Docket No. 62, pp. 20-21.

Considering both Defendants and Plaintiff's arguments, the Court finds that the adjusted *Howard* rates strike the proper balance and should be used for Mr. Harris and Mr. Wagenleitner. 2022 WL 1005304, at *5. As Defendants point out, the attorneys in the current case have fewer years of experience dealing with employment cases than the *Howard* attorneys. *Id.* at 4. Even so, the Court finds $450 and $375 per hour to be reasonable rates for Mr. Harris and Mr. Wagenleitner. As in *Howard*, this is in part due to inflation. *Id.* at 5. And, as Plaintiff points out, unlike in *Howard*, the case at bar was a *contested* case that involved *multiple* claims, rather than just a singular, essentially uncontested, FLSA claim. *Id.* at 4-5. Thus, while the present attorneys have fewer years of experience, the claims and case were more intricate than the *Howard* case. *See id.*

The Court is confused as to how HLA used its requested rates to calculate its requested lodestar amount. The Court has not found an explanation for the calculation in the relevant motion, memorandum, declarations, or billing record. If this explanation is present somewhere, Plaintiff has not clearly pointed out its location to the Court. Furthermore, HLA has not provided the Court a total number of hours that each individual attorney worked, which makes the Court's job of implementing new rates difficult. Instead, HLA has provided a billing record that includes only

individual daily entries, the total number of hours worked by the attorneys together, the total amount billed by the attorneys together, and an unexplained blended rate. *See* Docket No. 66-8. This billing record includes an individual entry for each day that each attorney worked on the case. *See id.* Each individual entry includes (1) the number of hours the attorney worked on the case that day, (2) the relevant attorney's rate, and (3) the dollar amount billed by the attorney for that day (which is the number of hours the attorney worked that day multiplied by that attorney's rate). *See id.*

HLA does provide a blended rate, yet, again, HLA does not explain how this blended rate was calculated. *See id.* The initial requested rates were $535.00 per hour and $375.00 per hour, and HLA claimed a blended rate of $450.00 per hour. *See id.* Upon the Court's calculation, the average of $535 and $375.00 is $455.00, not $450.00. In order to calculate the blended rate, it is the Court's *guess* that HLA has added up all of the individual entries for both attorneys (the amount HLA billed for each attorney for each day), then divided that number by the total number of hours worked on the case by both attorneys in order to arrive at the blended rate. Assuming this is how HLA came up with $450.00 per hour, this allowed the blended rate to reflect the number of hours each attorney put in. However, it is not reasonable nor appropriate for the Court to redo this type of calculation, which would require the Court to add up individual entries from 74 pages of a billing record, in order to implement Mr. Harris' changed rate. *See id.* Instead, in an attempt to mimic the type of blended rate used by HLA, the Court will average $450.00 per hour and $375.00 per hour then subtract five dollars to arrive at a new blended rate. This gives the Court a blended rate of $407.50 per hour.

b.     **SRVH Rates**

Regarding Christopher Sabis, Plaintiff requests $495.00 per hour for his work on the case.[3] Docket No. 62, p. 17. While Mr. Sabis is a seasoned attorney with prior experience investigating ADA claims, Mr. Sabis' rate of $495.00 per hour, as Plaintiff concedes, has not been approved in this context. *Id.* For the same reasons listed above regarding Mr. Harris, the Court finds that Mr. Sabis' rate should be lowered to $450.00 per hour. Mr. Sabis has 20 years of litigation experience and has prior experience with ADA claims. Docket No. 67, pp. 1-2. While Mr. Sabis does not claim to have 30 years of employment law experience like the attorney in *Howard*, this case was certainly more complex and contained several more claims than *Howard*. *Id.*; *see Howard*, 2022 WL 1005304, at *4. Thus, the Court finds $450.00 an hour to be proper.

For Amy Mohan, SRVH requests $475.00 per hour for 2.9 hours of work and $450.00 per hour for 1.2 hours of work. Docket No. 67-1, p. 3. Regarding Alice Haston, Plaintiff requests $315.00 per hour for her work. *Id.* As Defendants point out, Plaintiff has not provided sufficient information regarding these attorneys for the Court to evaluate these rates. *See* Docket Nos. 67, p. 2; 78, p. 16. Thus, the Court will use lower rates for these attorneys. *Cf. Krueger v. Experian Info. Sols., Inc.*, No. 19-10581, 2024 WL 497105, at *4 (E.D. Mich. Feb. 8, 2024) ("Given Plaintiff's failure to provide adequate information about the paralegals who worked on this case, the Court finds that Plaintiff should be awarded a rate that is toward the bottom of the scale in this District."). The Court will apply a rate of $250.00 per hour for both Amy Mohan and Alice Haston, which represents the low-end of the typical range of rates in the Middle District of Tennessee for employment-type actions. *Howard*, 2022 WL 1005304, at *4 ("[R]ecent opinions from within this

---

[3] Plaintiff requests a lower rate of $475.00 for Christopher Sabis for 1.1 hours. Docket No. 67-1, p. 3. However, given the new rate provided by the Court is lower than both rates charged by Christopher Sabis, this difference is not relevant.

district have approved hourly rates in FLSA disputes ranging from $250 to $475 per hour.").

Finally, for Lindsay Oduor (a paralegal who worked on the case), Plaintiff requests an hourly rate of $150.00. Docket No. 67-1, p. 3. The Court finds this rate to be reasonable. In 2021, this Court, while determining the reasonableness of an attorney fee award, assessed a rate of $125.00 for paralegal work. *Hargett*, 2021 WL 4441262, at *9. According to Mr. Sabis' declaration, Ms. Oduor "has a post-graduate Degree in Paralegal Studies from New York University and has practiced as a paralegal at Nashville law firms for twenty (20) years." Docket No. 67, p. 2. Given Ms. Oduor's experience and that three years' time has passed since *Hargett* (meaning the Court would expect the market-rate to be slightly higher now) the Court finds as reasonable an hourly rate of $150.00 for Ms. Oduor. *See* 2021 WL 4441262, at *9.

### 2. Reasonable Hours

As a preliminary matter, in Plaintiff's Reply, she maintains that Defendants' arguments challenging the reasonableness of the hours spent were made in a "conclusory fashion." Docket No. 85, p. 1. Therefore, Plaintiff argues that the Court "need only review the billing statement for fees that are unreasonable on their face." *Id.* at 2. The Court disagrees with the characterization of Defendants' billing challenges as conclusory and does not find Plaintiff's position on this matter persuasive. While in places Defendants certainly could have been more specific (*see generally* Docket No. 78), the Court understands that for the most part the issues with billing in this case were not with specific entries. Instead, the excessiveness and redundancy of the entries taken together is the most concerning issue. Furthermore, contrary to Plaintiff's characterization, in many places Defendants have either pointed to a specific entry or have provided enough

information in their arguments that the Court could easily find the entries Defendants had in mind.[4] Docket No. 78. Therefore, the Court will consider the reasonableness of the hours as the Court would in any other case.

Defendants make numerous arguments explaining why the time expended by Plaintiff's attorneys is not reasonable and should be reduced. *Id.* at 9-18. First, Defendants argue that Plaintiff engaged in unnecessary discovery practice, contending that discovery-related time should be reduced by 75%. *Id.* at 10. Second, Defendants maintain that the Court should reduce the attorneys' fees award to exclude the time spent on motions never filed. *Id.* at 12. Third, Defendants point out many instances of excessive, duplicative, or redundant time entries. *Id.* at 13. Specifically, Defendants maintain the unreasonableness of the time spent on client communications, internal communications, legal research, the mediation, a deposition of a third-party witness, travel, and clerical work. *Id.* at 13-15. Furthermore, Defendants dispute the time spent by Plaintiff's local counsel. *Id.* at 16. Among other arguments made concerning Plaintiff's local counsel, Defendants point out redundancy issues between the tasks local counsel completed and HLA completed. *Id.* As explained below, the Court sees many of the same issues as Defendants and finds a substantial number of the hours expended by Plaintiff's attorneys in this litigation to not be reasonable.

When there are issues in the billing record, such as problems with excessive or duplicative time entries and accuracy, the Court may impose an across-the-board reduction to the hours expended. *See, e.g.*, *Krueger*, 2024 WL 497105, at *7 ("Accordingly, due to the Court's concerns about block-billing, excessive billing, vagueness, and billing accuracy, a 35 percent reduction is warranted."). As the Supreme Court has explained, "trial courts need not, and indeed should not,

---

[4] For example, Defendants pointed to specific entries or to a set of entries in the "Time Spent on Motions Never Filed," "Mediation," and "Deposition of a Third-Party Non-Management Witness" sections of their brief. Docket No. 78, pp. 13-15.

become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838. Thus, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* Indeed, the Sixth Circuit has upheld a trial court's across-the-board 35 percent reduction of hours expended when there was a "lack of specificity and duplication in the attorneys' billing records." *Hubbell v. FedEx SmartPost, Inc.*, 933 F. 3d 558, 575-76 (6th Cir. 2019).

"Courts have recognized the impracticality of specifying each and every hour to be excluded in a…fee application…in which voluminous billing records must be examined, and for this reason, most circuits, including the Sixth, have authorized across-the-board fee reductions as an appropriate method of trimming fat from a fee application." *Alicia Ousley v. CG Consulting, LLC*, No. 2:19-CV-1744, 2024 WL 1443280, at *4 (S.D. Ohio Apr. 3, 2024) (internal quotations marks and citing reference omitted). When making these types of reductions, the Court needs only to "provide a 'clear and concise' explanation of the reasons for such a reduction, …enumerating and exemplifying the type of deficiencies present in Plaintiff's billing records." *Krueger*, 2024 WL 497105, at *7 (citing *Minor v. Comm'r of Soc Sec.*, 826 F.3d 878, 884 (6th Cir. 2016)).

The billing records include numerous problematic entries that warrant an across-the-board reduction to the hours expended. *See generally* Docket Nos. 66-8, 67-1. First, the Court has found repeated accuracy issues throughout HLA's billing record. *See* Docket No. 66-8. Second, the billing records contain many instances of both excessive billing and redundancy. *See id.*; Docket No. 67-1. In the sections below, the Court provides examples that typify these billing deficiencies.

a.    **Accuracy Issues**

While not raised by Defendants, the Court is troubled by the mathematical errors found

13

Case 3:22-cv-00965    Document 90    Filed 07/24/24    Page 13 of 25 PageID #: 1655

throughout HLA's billing record. To start, the very first entry on HLA's billing record includes a mathematical error. Docket No. 66-8, p. 3. From what is visible to the Court, on November 30, 2021, Mr. Harris completed 1.7 hours of work, yet he billed 3.7 hours for that day. *Id.* Likewise, on February 5, 2023, Mr. Harris appears to have worked for .5 hours, yet he billed .7 hours for that day. *Id.* at 12. And again, on March 6, 2023, the record indicates Mr. Harris completed 1.3 hours of work, yet he billed 1.5 hours for that day. *Id.* at 17. On May 21, 2023, Mr. Harris completed 5.1 hours of work, but he billed for 5.6 hours. *Id.* at 39. The aforementioned entries are only the instances the Court has noticed upon its review of the billing record; there very likely are more.

To be fair to Mr. Harris, sometimes when he incorrectly added up the hours, he ended up billing less hours than what the record indicates he actually worked.[5] Examples of this include entries on March 24, 2023, and April 21, 2023. *Id.* at 21, 28. All of these mathematical errors (regardless of whether they resulted in an upwards or downwards change in hours) give the Court concern about the accuracy of the billing record as a whole.

b. **Redundant and Excessive Billing**

Furthermore, the Court finds that both the HLA and SRVH billing records contain issues of redundant and excessive billing. Docket Nos. 67-1; 66-8. For example, the records reflect that the attorneys spent an excessive amount of time corresponding with one another. Docket Nos. 67-1; 66-8. Between May 8, 2023, and May 31, 2023, William Harris and Christopher Sabis had ten conferences or discussions about "strategy" or "discovery." Docket No. 67-1, p. 7. In almost all instances, both William Harris and Christopher Sabis billed for this time. *Id.*; Docket No. 66-8, pp.

---

[5] These instances do not appear to the Court to be entries where Mr. Harris was attempting to give a billing discount. Rather, in the context of the billing record, it seems to the Court that these were mere mathematical errors.

34-43.[6] The Court considers ten strategy and discovery-related conferences or discussions during this short time period between two partner-level attorneys to be an example of redundant billing, especially given this was a single-plaintiff employment case. Furthermore, during this same exact time period, both Ryan Wagenleitner and William Harris also billed for many conferences or correspondences with each other about strategy or discovery-related issues. *See* Docket No. 66-8, pp. 35-43.

The aforementioned communications are not the only instances of the attorneys excessively communicating with one another. As an example from a different time period in the case, page ten of HLA's billing record contains billing for 11 days' worth of billing. *Id.* at 10. And, on this page of the billing record alone, William Harris billed for six separate conference calls with Christopher Sabis. *Id.* During this same time period, William Harris also billed for three correspondences with Christopher Sabis. *Id.* SRVH's billing record reflects that Christopher Sabis billed for many of these same communications. Docket No. 67-1, p. 4. The undersigned could point out several other instances of excessive billing for communication among the attorneys but believes that these examples adequately demonstrate the point.

Similarly, the attorneys spent a significant amount of time communicating with Plaintiff, their client. For example, during April 2023 alone, HLA's billing record contains at least 15 entries for either "correspondence[s]" or conferences with Plaintiff. Docket No. 66-8, pp. 23-32. On six occasions (April 1, 4, 5, 19, 20, and 24), William Harris billed half an hour or more for that day's "correspondence" with Plaintiff. *Id.* at 23-24. Furthermore, April 2023 is just one instance; several

---

[6] It appears that Christopher Sabis often describes communications between the attorneys as discussions, while William Harris describes these same communications as correspondences, but it appears the two attorneys are billing for the same communications. *See* Docket Nos. 67-1, p. 7; 66-8, pp. 34-43.

other months also contain an excessive amount of billing for client communications (e.g., March 2023 included 16 entries for client communications, May 2023 included 17, and June 2023 included 10).[7] *Id.* at 16-23, 32-54. There is no individual entry that is problematic in the Court's eyes but taken together, the Court finds the attorneys have billed an excessive amount for client communications. The Court of course understands and expects that attorneys will communicate with their clients regarding their cases, but this case's billing record exceeds what the Court views as an appropriate level of billing for client communications.

Likewise, often times multiple attorneys completed tasks that could have been completed by one attorney—which supports a reduction in fees, especially considering this was a single-plaintiff employment case and it was multiple experienced attorneys who were completing the same tasks. *See Howard*, 2022 WL 1005304, at *5 ("[I]t was unnecessary and redundant for both attorneys to attend court conferences, depositions, and meetings and for both to review correspondence and court filings."). For example, several times William Harris and Ryan Wagenleitner both billed for the client conferences. *See generally* Docket No. 66-8. To provide a specific example, on April 7, 2023, a conference call with Plaintiff lasted 1.8 hours, and both William Harris and Ryan Wagenleitner attended and billed for that call. *Id.* at 25. Likewise, on June 7, 2023, both William Harris and Ryan Wagenleitner billed for a 2.1-hour conference with Plaintiff. *Id.* at 46. While multiple attorneys attending conferences calls is not per se unreasonable, given the frequency and length of the communications with Plaintiff in general, the Court views multiple attorneys attending these calls to be unreasonable.

---

[7] These calculations include entries for both attorneys when both attorneys billed for the relevant communications.

c.      **Miscellaneous Issues**

As the final set of problematic examples, the Court has found several instances where Plaintiff either requests a fee award for hours spent completing a task generally not compensable in a fee award or has billed multiple hours for a task that the Court believes could be completed in less time. The Court is troubled by these sorts of entries and finds they provide additional support for applying an across-the-board reduction. For example, Plaintiff requests an award for hours spent by Amy Mohan (a SRVH attorney) preparing a media statement, but *Hargett* counsels that time spent on press coverage is generally not compensable. 2021 WL 4441262, at *8 ("[A]ctivities by attorneys focused on press coverage or publicity will typically not be recoverable."). Furthermore, on September 27, 2023, Ryan Wagenleitner spent 4.1 hours, reviewing, annotating, and summarizing a third-party deposition transcript, which provides an example entry where more timed was billed than the undersigned could understand as being necessary. Docket No. 66-8, p. 71. These entries, and others like them, concern the Court of the reasonableness of the hours on the whole.

d.      **Plaintiff's Discovery Argument**

Plaintiff attempts to justify the excessive hours spent on this case by asserting that Defendants were obstructive and difficult during discovery. Docket No. 62, pp. 11-15. Defendants counter this characterization, asserting that "Plaintiff's counsel engaged in gamesmanship of their own," and that Defendants had to respond "to the voluminous discovery sets constantly peppered to Defendants by Plaintiff." Docket No. 78, pp. 10-11. Discovery in this case had some contentious elements, and the Court expects and accepts as reasonable in this case a slight increase of hours due to the discovery disputes. Indeed, as calculated below, the Court is recommending a fee award for 716.1 hours, which in part reflects the additional time needed to spend on discovery in this

case. However, the undersigned oversaw discovery in this case, and from the Court's perspective and experience, discovery was not so far out of the ordinary as to warrant the sheer number of hours Plaintiff has requested.

Indeed, recent employment discrimination cases that went through full discovery, trial preparation, and trial have commanded fee awards for significantly fewer hours than the number of hours for which Plaintiff has requested an award. For example, in the employment case *Reeder v. County of Wayne*, the court considered the plaintiff's motion for a fee award seeking 692.6 hours. No. 15-CV-10177, 2016 WL 6524144, at *3 (E.D. Mich. Nov. 3, 2016). The Court granted the motion only after reducing the number of hours by 10% due to block-billing issues. *Id.* at *7. *Reeder* included a motion for summary judgment, an oral argument regarding that motion, and six days of trial. *Id.* To the contrary, the case at bar did not reach any of these common litigation stages, yet Plaintiff still seeks a fee award for approximately 1,100 hours. Docket Nos. 66-8; 67-1, p. 3; 85-2, p. 1. In light of cases like *Reeder*, the Court cannot accept the argument that a fee award for approximately 1,100 hours is justified or reasonable due to some early-stage discovery disputes and issues. 2016 WL 6524144, at *7. Many cases have discovery disputes necessitating court intervention, and, as Defendants point out, discovery in this case did not even reach the point of deposing any of the parties. Docket No. 78, p. 1. And, in any event, an excessive number of nondiscovery-related hours were billed. *See generally* Docket No. 66-8.

### 3. Reduction

In light of the billing deficiencies discussed above, the Court finds an across-the-board reduction of 30% to be proper. This reduction is in line with the types of reductions taken in cases within the Sixth Circuit that presented similar types of deficiencies. *See, e.g.*, *Hubbell*, 933 F. 3d 558, 576 ("[W]e cannot say that the court exceeded the scope of its authority in reducing the

number of billed hours by 35 percent due to the lack of specificity and duplication in the attorneys' billing records."); *Krueger*, 2024 WL 497105, at *7 ("Accordingly, due to the Court's concerns about block-billing, excessive billing, vagueness, and billing accuracy, a 35 percent reduction is warranted.").

C.    **Calculation of Fee**

Initially, Plaintiff requested for HLA's work a fee award covering 1,005 hours. Docket No. 66-8. Then, Plaintiff added 2.1 hours to this request due to William Harris' work completed following the initial fee petition, for a total request of 1,007.1 hours. Docket No. 85-2, p. 1. Applying to the 1,007.1 hours the 30% across-the-board reduction, the Court recommends an award of fees for 704.97 hours for HLA's work. Using HLA's new blended rate of $407.50 per hour, the Court recommends a fee award of $287,275.27 for the work performed by HLA.

For the work of SRVH, Plaintiff requests a fee award for the work of each attorney or paralegal as follows: 4.1 hours for Amy Mohan's work, 68.5 hours for Christopher Sabis' work, 1.2 hours for Alice Haston's work, 20.8 hours for Lindsay Oduor's work. Docket Nos. 67-1, p. 3; 85-2, p. 1.[8] These numbers include both the initial request from SRVH's main bill and the request for hours associated with work occurring after the initial fee petition's filing. Docket Nos. 67-1, p. 3; 85-2, p. 1. Applying the 30% across-the-board reduction, the number of hours for which the Court recommends a fee award is as follows: 2.87 hours for Amy Mohan's work (at an hourly rate of $250.00), 47.95 hours for Christopher Sabis' work (at an hourly rate of $450.00), .84 for Alice Haston's work (at an hourly rate of $250.00), and 14.56 for Lindsay Oduor's work (at an hourly rate of $150.00). Thus, the total recommended award for the work performed by SRVH is $24,689

---

[8] In the initial bill, there are an additional 8.5 hours by Christopher Sabis and 2.9 hours by Lindsay Oduor, but considering SRVH has assessed a rate of $0.00 for these hours, the Court takes that to mean that SRVH intends for those hours to not be included. Docket No. 67-1, p. 3.

Therefore, in sum, the Court recommends a fee award of $311,964.27, which represents an award for 771.19 hours.

### D. Consideration of *22-9* Factors

As described earlier in this Report and Recommendation, in either "determining the basic lodestar fee and/or adjustments thereto," the district court *may* consider the following *Johnson* factors:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Adcock-Ladd*, 227 F.3d at 349 n.8.

Plaintiff makes several arguments for why the *Johnson* factors support the high fee award. Specifically, Plaintiff argues that a high fee award is justified as she contends (1) extraordinary results were obtained, (2) this has been "a labor-intensive matter," (3) Plaintiff's lawyers are skilled and experienced lawyers, (4) this case required the skills of Plaintiff's lawyers, (5) the rates requested are the same or lower than Plaintiff's lawyers' rates in other cases, (6) the fees are consistent with fee awards in similar cases in this district, (7) prominent Nashville attorneys agree that the fee is reasonable, (8) the fee is contingent, (9) the case precluded other employment for Plaintiff's attorneys, (10) the case was difficult due to discovery issues, (11) time limitations existed due to Ms. Moore's continued employment by Mount Zion, (12) this case was undesirable given one of the Defendants is a religious institution, and (13) the lawyers maintained a close working relationship with Plaintiff. Docket No. 62, pp. 6-7, 11, 15, 17-19, 21-23.

In this case, the undersigned finds that the lodestar amount already includes consideration of any *Johnson* factors that may be relevant to this case. As courts within this circuit have explained, "[t]he *Johnson* factors are generally incorporated into the lodestar method." *See, e.g.*, *McClain v. Hanna*, No. 2:19-CV-10700, 2019 WL 7288768, at *3 (E.D. Mich. Dec. 30, 2019). Indeed, as the Sixth Circuit has stated, "The Supreme Court…has limited the application of the *Johnson* factors, noting that 'many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Geier*, 372 F.3d at 792 (quoting *Hensley*, 461 U.S. at 434 n. 9). Specifically, throughout this Report and Recommendation, the undersigned already discussed or explicitly considered seven of the factors. For example, the Court, in determining the rates or reasonableness of the hours, discussed the attorneys' experience, the attorneys' rates, awards in other cases, the complexity of the claims and discovery issues, and the lawyer-client communications.

The undersigned will briefly discuss the five factors not explicitly considered earlier in the Report and Recommendation. In sum, the Court finds that these five *Johnson* factors (the results obtained, whether the fee is fixed or contingent, preclusion of employment, time limitations, and the undesirability of the case) do not warrant any upward or downward adjustment. Beginning with the results obtained, although the settlement was a good outcome for Plaintiff, the Court does not find the settlement to be particularly extraordinary such as to warrant an upward adjustment. Second, contrary to Plaintiff's argument, this case being on a contingent basis does not warrant any upward adjustment in the fee. *See City of Burlington v. Dague,* 505 U.S. 557, 562 (1992); *Lee v. Javitch, Block & Rathbone, LLP*, 568 F. Supp. 2d 870, 880 (S.D. Ohio 2008) ("[Defendant] correctly notes that, after *City of Burlington,* contingency risk alone is not sufficient to support a multiplier."). Third, Plaintiff's preclusion of employment argument does not persuade the Court.

21

Docket No. 62, p. 22. If an appropriate number of hours had actually been expended on this matter, other employment would not have been precluded, and, in Court's view, the lodestar already contemplates this factor in determining a reasonable number of hours.

Fourth, the undersigned is unpersuaded by Plaintiff's argument that her continued employment by Mount Zion supports a high fee award. Plaintiff maintains that this continued employment placed time restrains on Plaintiff's counsel, alleging that her working conditions were "continually deteriorating" and "[e]arly resignation was not a viable option as she feared that Defendants would use that resignation as a means to further stonewall her in discovery." *Id.* at 23. The Court does not find any adjustment based on this factor to be warranted. As Defendants point out, this argument cuts both ways. Defendants did not terminate Plaintiff and by Plaintiff remaining employed, she kept a steady source of income. *See* Docket No. 78, p. 20.

Lastly, regarding the undesirability of the case, Plaintiff has not provided sufficient evidence to support that this was such an undesirable case as to warrant a high fee award. Docket No. 62, p. 23. Four lawyers declining representation does not persuade the Court, especially considering it is unclear why representation was denied. *See id.* While this is a lawsuit that some attorneys may be unwilling to pursue given one of the Defendants is a religious institution, it seems likely to the Court that other attorneys would remain impartial with regard to the identities of the Defendants, and Plaintiff has not provided contrary evidence. *See id.*

Based on the *Johnson* factors, Defendants make two additional arguments for why the fee amount should be lowered. First, Defendants point to other employment cases that resulted in lower fee awards. Docket No. 78, pp. 9-10. The undersigned finds that these cases do not support a further reduction in hours, considering the Court, while calculating the loadstar, has already contemplated other similar cases. *See e.g., supra,* section II(B)(2)(d). Second, Defendants argue

that the award should be decreased because Defendants' counsel spent fewer hours on this case than Plaintiff's counsel. Docket No. 78, pp. 21-22. In light of the Court already recommending a 30% reduction in hours, the Court does not find Defendants' argument on this matter to be persuasive. While there is still a discrepancy in hours, after the reduction, the gap is smaller now and does not concern the Court given the facts and circumstances of this case. The Court ultimately finds both parties' arguments regarding the *Johnson* factors considered in this section to be unpersuasive. Even if the Court were to find in favor of the Plaintiff on one of the factors they assert and raise the award, the Court would then be equally and necessarily compelled to give merit to Defendant's counterarguments and lower it. The result, then, would be the same.

### III. COSTS

In addition to attorneys' fees, Plaintiff seeks recovery of "litigation expenses," which she asserts total $6,720.71. Docket Nos. 62, 67, 69. "Federal Rule of Civil Procedure 54(d)(1) provides that '[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party.' The expenses that a federal court may tax as costs are set forth in 28 U. S. C § 1920." *Carney v. Suncrest Healthcare of Middle Tennessee, LLC*, No. 3:13-CV-00527, 2016 WL 5468268, at *1 (M.D. Tenn. Sept. 28, 2016) (citing reference omitted). Defendant does not object to Plaintiff's calculation of the costs except on the grounds that two included expenses are not recoverable under 28 U.S.C. § 1920: Travel expenses to and from Nashville by out-of-town counsel and *pro hac vice* fees. Docket No. 78, p. 21.

"It is within the Court's discretion whether or not to award fees for time spent in travel given the district court's familiarity with local practice." *Grier v. Goetz*, No. 3:79-3107, 2009 WL 10729589, at *20, (M.D. Tenn. Aug. 13, 2009) (citing *Perotti v. Seiter*, 935 F. 2d 761, 765 (6th Cir. 1991). Likewise, in the case where out-of-town counsel were employed, the reasonability of

travel expenses to and from the forum state will depend on the necessity of retaining out-of-town counsel. *Ramos v. Lamm*, 713 F. 2d 546, 559 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987). In *Grier*, the Court allowed out-of-town travel costs only after determining that "retention of out-of-town counsel was both necessary and reasonable," citing *Ramos* for its rule but reaching the opposite conclusion with the opposite facts. *Grier*, 2009 WL 10729589 at \*20. This Court thus finds that where, as here, employment of out-of-town counsel was not necessary, their travel expenses should not be included in costs awarded under 28 U.S.C. § 1920.

With respect to *pro hac vice* fees, both the Western and Middle District Courts in Tennessee have previously declined to award the cost of *pro hac vice* filing fees under § 1920(1). *See, e.g., Keatley v. Escape Game LLC*, No. 3:21-cv-00230, 2022 WL 1432552, at \*9 (M.D. Tenn. May 5, 2022); *Clay v. Berryhill*, No. 17-2586-DKV, 2019 WL 12711724, at \*1 (W.D. Tenn. July 29, 2019). This Court sees no reason to now depart from these well-reasoned perspectives.

For the foregoing reasons, this Court recommends a denial of both Plaintiff's travel expenses to and from Nashville by out-of-town counsel and Plaintiff's *pro hac vice* filing fees. Docket Nos. 69-5, p. 77; 67-1, p. 12. Accordingly, this Court recommends an award of costs in the amount of $5,575.80.

## IV. CONCLUSION

For the foregoing reasons, the undersigned recommends that Plaintiff's Motion (Docket No. 61) be **GRANTED IN PART** and **DENIED IN PART**. As thoroughly explained above, the undersigned recommends that the rates for several of the attorneys be lowered to match their experience and reflect the prevailing market rate. Furthermore, the issues with accuracy, excessive billing, and redundant billing persuade the undersigned that Plaintiff's claimed attorneys' fees

should be reduced. Considering all of the Parties' arguments, the undersigned recommends a 30% across-the-board reduction of the hours claimed, which, when implemented with the new recommended rates, provides a total attorneys' fee award of $311,964.27. In addition, for the reasons stated above, the undersigned recommends that Plaintiff's costs be reduced to $5,575.80. Thus, in total, the undersigned recommends an award of attorneys' fees and costs to Plaintiff of $317,540.07.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**